**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| **Applicant,** | : | **MC. No.** |
| **-against-** | : | |
| **INSTITUTIONAL SHAREHOLDER SERVICES, INC.,** | : | |
| **Respondent.** | : | |

**DECLARATION OF BRENDAN P. MCGLYNN IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH AN ADMINISTRATIVE SUBPOENA**

I, Brendan P. McGlynn, hereby declare as follows:

1. I am employed as an Assistant Director and attorney in the Enforcement Division of the United States Securities and Exchange Commission (the "SEC" or "Commission") in the Philadelphia Regional Office, located at 1617 JFK Blvd., Suite 520, Philadelphia, Pennsylvania 19103. My official duties include participating in fact-finding inquiries and investigations to determine whether federal securities laws have been, are presently being, or are about to be violated, and assisting in the Commission's litigation of enforcement actions.

2. I received a Bachelor's Degree in Business and Finance from Mount Saint Mary's University in 1989 and a Juris Doctorate from the Catholic University's Columbus School of law in 1995.

3. I am a licensed attorney in the Commonwealth of Pennsylvania and the State of New Jersey.

4. I make this declaration based on my personal knowledge, information, and/or belief in support of the Securities and Exchange Commission's Application For An Order To Show Cause And For An Order Requiring Compliance With An Administrative Subpoena. My declaration is based upon my participation in the SEC Division of Enforcement's inquiry and subsequent investigation of Institutional Shareholder Services, Inc. ("ISS").

5. Since 1997, ISS has been registered with the Commission as an investment adviser under the Investment Advisers Act of 1940 ("Advisers Act").

6. ISS is a proxy advisor that provides, among other services, recommendations to advisory clients on votes for public issuer matters subject to shareholder votes, such as board or shareholder proposals. ISS's clients include investment advisers to institutional investors such as SEC-registered investment companies, SEC-registered broker-dealers, pension funds, banks, hedge funds and other asset management firms. A true and correct copy of ISS's March 31, 2026 Form ADV Part 2 Brochure is attached hereto as Exhibit 1.

7. SEC registered investment advisers, such as ISS, are subject to the books and records, examination, and other compliance related provisions of the Advisers Act and owe their clients fiduciary duties of care and loyalty. The adviser "must, at all times, serve the best interest of its clients and not subordinate its client's interest to its own." A true and correct copy of Commission Interpretation Regarding Standard of Conduct for Investment Advisers, 84 FR 33669 (July 12, 2019) is attached hereto as Exhibit 2.

8. On March 19, 2026, SEC's Division of Examinations based out of the SEC's Philadelphia Regional Office initiated an examination of ISS to evaluate ISS's compliance with

the federal securities laws. The SEC conducts examinations to "determine whether the entity being examined is: conducting its activities in accordance with the federal securities laws and the rules adopted under these laws . . . ; adhering to the disclosures it has made to its clients, customers, the general public, and/or the Commission; and implementing supervisory systems and/or compliance policies and procedures that are reasonably designed to ensure that the entity's operations are in compliance with applicable legal requirements." A true and correct copy of the SEC's Information for Entities Subject to Examination or Inspection by the Securities and Exchange Commission is attached hereto as Exhibit 3.

9. Among other things, the SEC examination team requested ISS to produce data relating to proxy recommendations and votes, including the names of clients who received proxy recommendations and information about votes cast on their behalf.

10. On April 27, 2026, ISS produced sample reports for three clients ("Sample Reports") that it generated by querying its proprietary ProxyExchange system. During the week of May 4, 2026, the SEC examination team confirmed that the Sample Reports contained the requested information for those clients and requested ISS to provide similar reports for all clients during the examination period. A true and correct copy of the June 24, 2026 letter from Mark Dowdell, Associate Director, Division of Examinations, to Marie-Anne Pissarri, Esq. is attached hereto as Exhibit 4.

11. After multiple follow-up requests sent from the Division of Examinations to ISS requesting the production of the requested information contained in the Sample Reports for all clients for the relevant period, counsel for ISS stated in a letter that it did not have a central depository of such reports and that curating them would be unduly burdensome. A true and correct copy of the June 29, 2026 letter from Mari-Anne Pisarri, Esq., to Mark Dowdell,

Associate Director, Division of Examinations is attached hereto as Exhibit 5.

12. The SEC's Division of Examinations referred ISS to the SEC's Division of Enforcement because the company's failure to produce the requested information had impeded the staff's ability to properly conduct the examination. On July 2, 2026, SEC Division of Enforcement staff based out of the Philadelphia Regional Office opened an inquiry into ISS's failure to produce the information contained in the Sample Reports for all ISS clients, and informed ISS's counsel of this inquiry on July 6, 2026.

13. During subsequent telephonic and written communications between ISS's counsel and investigative staff within the Division of Enforcement between July 7 and July 16, 2026, ISS declined to produce the information contained in the Sample Reports for all clients. True and correct copies of the July 10, 2026 letter from Mari-Anne Pisarri, Esq. to Kevin E. Levenberg, Esq.; the July 15, 2026 letter from Mari-Anne Pisarri, Esq. to Kevin E. Levenberg, Esq.; and the July 16, 2026 letter from Kevin E. Levenberg, Esq. to Mari Anne Pisarri, Esq. are attached hereto as Exhibits 6, 7, 8, respectively.

14. On July 20, 2026, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony entitled *In the Matter of Investor Shareholder Services Inc*. ("Formal Order"). A formal order generally describes the nature of an investigation and designates specific staff members to act as officers of the Commission for the purposes of the investigation. The formal order empowers the designated staff members to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of documents and other materials. Here, the Formal Order authorized the SEC staff to investigate whether ISS and its directors and officers had violated, were

violating, or were about to violate Sections 204, 206(1), 206(2), and 206(4) of the Advisers Act and Rules 204-2 and 206(4)-8 thereunder .

15. On July 21, 2026, SEC counsel served an investigative subpoena on ISS requesting the production by August 4, 2026: (1) certain client information; (2) voter registration agreements; and (3) an electronic export of ProxyExchange recommendations and voting data for all ISS voting services clients. A true and correct copy of the July 21, 2026 Subpoena is attached hereto as Exhibit 9.

16. On August 4, 2026, the SEC agreed to extend the return date to August 11 and offered that ISS would have additional time to produce documents on a rolling basis. A true and correct copy of the August 4, 2026 letter from Kevin E. Levenberg, Esq. to Paul Bazil, Esq. is attached hereto as Exhibit 10.

17. On August 10, 2026, counsel for ISS agreed telephonically to produce items responsive to Requests 1 and 2 of the subpoena but declined to produce documents in response to Request 3 in the form of the previously produced Sample Reports. Instead, counsel for ISS proposed anonymizing certain information contained in the Sample Reports for all ISS clients. On a follow-up telephone call, on August 18, 2026, counsel for ISS offered to provide, as examples of its proposal, the Sample Reports in anonymized form.

18. On August 24, ISS advised the SEC telephonically that it would be unable to produce the anonymized reports as promised without hiring a third-party expert "data cruncher" to review the data, identify all fields that may tend to identify any aspect of a direct ISS client or a "downstream" client of ISS's client, and devise a methodology to reformulate ProxyExchange data to conceal all client identifiers. ISS could not provide a production date or indication of what the output of the expert's analysis might be.

19. On August 24, 2026, ISS sent a follow-up letter to SEC counsel outlining their objections to the production of information responsive to Request 3 claiming, among other things, that production of the information would breach client confidentiality relating to client voting of proxies. ISS also cited the President's December 11, 2025 Executive Order 14366 ("Executive Order") as evidence that production of information responsive to Request 3 would subject their clients to retaliatory actions for having engaged in protected speech under the First Amendment of the United States Constitution. A true and correct copy of the August 24, 2026 letter from Douglas A. Fellman, Esq. to Kevin E. Levenberg, Esq. is attached hereto as Exhibit 11. A true and correct copy of the Executive Order is attached hereto as Exhibit 12.

20. On September 1, 2026, SEC counsel replied to ISS's objections and proposed a compromise. A true and correct copy of the September 1, 2026 letter from Kevin E. Levenberg, Esq. to Douglas A. Fellman, Esq. is attached hereto as Exhibit 13.

21. SEC counsel explained that the SEC frequently obtains confidential and sensitive data from other registrants and that clients have been made aware through ISS agreements and elsewhere that such data could be disclosed to the SEC. A true and correct copy of ISS's Privacy Notice downloaded on August 28 2026, is attached hereto as Exhibit 14.

22. SEC counsel also explained why ISS's First Amendment arguments are meritless. *See* September 1, 2026 letter from Kevin E. Levenberg, Esq. to Douglas A. Fellman, Esq., attached hereto as Exhibit 13.

23. On September 3, 2026, ISS responded to the SEC and rejected the SEC's proposed compromise. A true and correct copy of the September 3, 2026 letter from Douglas A. Fellman, Esq. to Kevin E. Levenberg, Esq. is attached hereto as Exhibit 15.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

s/ Brendan P. McGlynn Esq.
Brendan P. McGlynn, Esq.

Dated: September 4, 2026