# EXHIBIT 3

# INFORMATION FOR ENTITIES SUBJECT TO EXAMINATION OR INSPECTION BY THE SECURITIES AND EXCHANGE COMMISSION

**The examination staff (staff) of the Division of Examinations (EXAMS) of the Securities and Exchange Commission (Commission) has prepared this brochure to provide information about examinations it conducts, including information about the examination process and the methods the staff employs for resolving issues identified during examinations. This information, provided to entities undergoing examination or inspection, should help entities to understand better the staff's objectives in this area.**[1]

## I. PURPOSE OF EXAMINATIONS

Commission representatives have statutory authority to conduct, at any time or from time to time, reasonable periodic, special, and other examinations of the records of specified Commission-regulated entities (entity or entities). The staff carries out these responsibilities in 10 regional offices and headquarters in Washington, DC. EXAMS' mission is to protect investors, ensure market integrity, and support responsible capital formation through risk-focused strategies that: improve compliance, prevent fraud, monitor risk, and inform policy.

During examinations, the staff will seek to determine whether the entity being examined is: conducting its activities in accordance with the federal securities laws and the rules adopted under these laws (as well as, where applicable, the rules of self-regulatory organizations subject to the Commission's oversight); adhering to the disclosures it has made to its clients, customers, the general public, and/or the Commission; and implementing supervisory systems and/or compliance policies and procedures that are reasonably designed to ensure that the entity's operations are in compliance with applicable legal requirements.

The staff appreciates each entity's cooperation as it will facilitate the staff's ability to timely complete the examination. Entities should work promptly to provide the staff with complete and accurate information and ensure that knowledgeable employees are made available to help the staff better understand the entity and its operations.

## II. THE EXAMINATION PROCESS

The Commission's examination program is risk-based. An entity may be selected for examination for any number of reasons including, but not limited to, a statutory mandate that requires the Commission to examine the entity; the entity's risk profile; a tip, complaint, or referral; or a review of a particular compliance risk area. The reason an entity has been selected

[1] This statement represents the views of staff of EXAMS. It is not a rule, regulation, or statement of the Commission. The Commission has neither approved nor disapproved its content. This statement, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or additional obligations for any person.

for examination is non-public information and typically will not be shared with the entity under examination. As part of the pre-examination planning process, the staff strives to efficiently allocate resources and minimize, if possible, any overlap with the scope of any recent or ongoing examinations or investigations by other regulators or other Commission staff. If an entity has any concerns with respect to overlapping examinations or investigations, the entity should contact the Commission staff involved.

Throughout the examination process, the staff may consult and/or coordinate with other Commission staff regarding any issues identified and the interpretation and application of the securities laws and rules adopted under these laws, and, as applicable, self-regulatory organization rules. As a result, the staff may share information and documents received from the entity with other Commission staff to the extent the staff deems necessary or appropriate. The Commission may also share information and documents with other regulators or authorities. Whether the Commission has shared information and documents received from an entity is a confidential matter. These and other possible uses of information and documents provided to the staff are described in the Commission's Form 1661, which is provided to entities at the outset of an examination and may be accessed at www.sec.gov/files/sec1661.pdf. The staff does not accept limitations on these routine uses. Similarly, when an entity or its service provider requires acceptance of terms and conditions to access websites, applications, or other systems that contain the entity's books and records, any action taken by the staff purportedly agreeing to such terms and conditions, including clicking an "accept" button, will not constitute an acceptance of the terms or conditions and will not bind the staff or the Commission in contract.

Examinations may be conducted on an announced or unannounced basis. When the examination is announced, the staff typically phones the entity's Chief Compliance Officer or regulatory personnel and follows up with a letter notifying the entity of the examination and requesting information, including documents, that the staff will review as part of the examination. These information requests are generally transmitted through secure email. Information regarding data delivery and the use of secure email and file transfer are available at https://www.sec.gov/about/divisions-offices/division-examinations/resources-registrants. While the staff cannot comment on the specific safeguards that the Commission takes to protect non-public information, the protection of non-public information, including documents and information provided by entities during examinations, is of the utmost importance to EXAMS. When the examination is unannounced, the staff may provide the entity with a request for information, including documents, upon arrival and may conduct an initial interview. In most instances, the staff will request that information and documents be provided in electronic format via secure transmission by a specified date. For any records that cannot be produced in electronic format, the entity should promptly make such records available for examination in another manner. The Commission expects that in most circumstances records should be available to staff within 24 hours; however, the staff typically provides a longer period of time to produce records. The staff will grant requests for reasonable extensions of time, where appropriate. In all cases, the timely production of the requested information and documents will facilitate the staff's efficient completion of the examination.

The staff will typically request meetings (in person, by telephone, or by videoconference) with entity employees to discuss the entity's operations and the information and documents provided. The entity should make knowledgeable employees or other knowledgeable persons available to participate in the meetings. These meetings help the staff gain a better understanding of the entity's activities and compliance processes. During on-site meetings, the staff may ask for a tour

of the entity's offices to gain an overall understanding of the entity's organization, flow of work, and control environment. For videoconferences, meeting participants are encouraged to use their cameras and to use screen-sharing functions when helpful. The staff does not record or transcribe meetings and instructs entities not to do so, either. The staff does not consent to the use of recording, transcription, or other similar technologies by entities during meetings. In some circumstances, the staff may make unannounced and unscheduled visits to the entity's offices. When scheduling meetings with the staff, the entity's cooperation will facilitate the examination.

As the staff reviews information and documents the entity has provided, the staff may make supplemental requests for information and documents. Throughout the examination, the entity should communicate promptly to the staff any questions or concerns regarding the documents and information that have been requested. Entities are encouraged to keep the staff informed of any relevant changes that occur during the examination, including any actions the entity has taken or plans to take to address any issues discussed with the staff. Although some examinations may initially be conducted by telephone or videoconference, the staff may decide at any point during the examination to conduct an on-site visit.

The staff may also request relevant information and documents held by third-party service providers or agents (including custodians) that, for example, perform work for, or in conjunction with, the entity, or whose activities may have a material effect on the entity's operations. The staff may send such requests to the entity or directly to the third-party service provider or agent. In addition, the staff often contacts the entity's clients, customers, or other knowledgeable persons, as necessary, to gather and/or verify relevant information.

Once interviews with entity personnel have been completed, or at any time it is deemed reasonable to do so, the staff may conduct a preliminary exit conference with the entity to discuss the examination status, including any outstanding requests for information, and, if appropriate, to raise any issues identified up to that point during the examination. The entity may be given an opportunity to discuss the issues that the staff has raised and provide additional relevant information. Communications from the staff do not, and are not intended to, constitute legal advice.

## III. COMPLETING AN EXAMINATION

After the staff has completed its interviews and analyses, the staff typically conducts an exit conference with the entity to discuss any issues identified during the examination. The entity will typically be given an opportunity to discuss any of the issues that the staff has raised during the examination and provide additional relevant information, including any actions that the entity has taken or plans to take to address the issues raised. In connection with any form of exit conference, the staff may speak with the entity's senior management and/or its board of directors.

Section 4E(b)(1) of the Securities Exchange Act of 1934 requires the staff to provide the entity being examined or inspected with written notification indicating either that the examination or inspection has concluded, has concluded without findings, or that the staff requests the entity undertake corrective action, within 180 days from the later of the completion of the on-site portion (if applicable) of the examination or inspection or the receipt of all records requested from the entity being examined or inspected. For certain complex examinations, the examination deadline may be extended for an additional 180-day period without notification to the entity.

None of these outcomes forecloses the Commission from taking any action, including but not limited to an enforcement action, against the entity. Even if the staff's written notification does not address a particular activity, that does not mean that all of an entity's activities comply with the federal securities laws.

Generally, the staff will provide an entity with written notification of an examination's completion by sending a deficiency letter. In addition to sending the entity a deficiency letter, the staff may refer the issues to the Commission's Division of Enforcement, a self-regulatory organization, state regulatory agency, or others, including criminal authorities, for possible action. The staff may sometimes make a referral to the Division of Enforcement without conducting an exit conference or sending a deficiency letter, usually in exigent circumstances.

The entity will be asked to respond in writing to any issues identified in a deficiency letter, including any steps that it has taken or intends to take to address the issues and to prevent their recurrence. The entity's response will generally be due within 30 days of the date of the deficiency letter and should address all of the issues identified in the deficiency letter. An entity's submission of a timely and complete response to a deficiency letter will expedite the staff's completion of the examination.

If the staff has comments on an entity's response, the staff generally will either provide them to the entity within 60 days of receipt of the entity's response, or contact the entity within the 60-day period to discuss when the staff will be able to provide comments. If the staff has no further comments after receiving an entity's response to a deficiency letter, the examination will be closed. This does not mean, however, that the staff concurs with the entity's response. The staff generally does not return records produced during an examination. The staff conducts a limited number of follow-up reviews to determine whether entities have taken the corrective actions discussed in their responses.

## IV. QUESTIONS, CONCERNS, AND VERIFICATION OF STAFF IDENTITY

Questions, comments, complaints, or concerns arising during or after an examination, can be raised with the staff or with their supervisors in the respective regional office or headquarters. Most questions and issues can be resolved by discussing them with the staff. Comments, complaints, or concerns can also be communicated through the *Examination Hotline* (202.551.EXAM or examhotline@sec.gov). The *Examination Hotline* provides the option to speak with either an attorney in the Division of Examinations in Washington, DC, or staff in the Commission's Office of Inspector General. The Office of Inspector General is an independent office within the Commission that audits Commission programs and investigates allegations of employee misconduct. Persons speaking with staff on the *Examination Hotline* may identify themselves or request anonymity.

For all examinations, staff will identify themselves and will present their Commission credentials upon request. The identity of staff can be confirmed through the *Examination Hotline*.

## V. INFORMATION REGARDING THE COMMISSION'S OFFICE OF THE WHISTLEBLOWER

Congress authorized the Commission to provide monetary awards to eligible whistleblowers who voluntarily come forward with high-quality, original information that leads to a successful Commission enforcement action in which the Commission obtains monetary sanctions totaling

more than $1,000,000. The range for awards is between 10% and 30% of the monetary sanctions collected in the Commission action or in a related action upon which the award is based. A "whistleblower" is an individual who voluntarily provides original information in writing to the Commission about a possible violation of the federal securities laws that has occurred, is ongoing, or is about to occur. To be eligible for an award based on any information provided by the whistleblower that relates to a possible violation of the federal securities laws, the whistleblower must comply with the procedures and the conditions described in Rule 21F of the Securities Exchange Act of 1934. One of those procedures, among others, specifies that a whistleblower must provide the information to the Commission on Form TCR or through the Commission's online TCR portal and sign the required declaration. One of the conditions, among others, is that the whistleblower's submission must be voluntary. Information is provided "voluntarily" if it is provided before a request, inquiry, or demand that relates to the subject matter of the submission is directed to the whistleblower or a representative (i) by the Commission; (ii) in connection with an investigation, inspection, or examination by the Public Company Accounting Oversight Board, or any self-regulatory organization; or (iii) in connection with an investigation by the Congress, any other authority of the federal government, or a state Attorney General or securities regulatory authority. A whistleblower must be an individual, providing information alone or jointly with others. A company or other entity cannot be a whistleblower. A person is not required to be an employee of an entity to submit information about that entity.

The Commission's Office of the Whistleblower administers the whistleblower program. Additional information about the program, including how to submit a tip under the program, is available at www.sec.gov/whistleblower. The Office of the Whistleblower may be reached at 202.551.4790.

*Small Business Owners*: The National Ombudsman resolves concerns of uneven or excessive federal regulatory enforcement. Reviews are confidential and do not waive the right to pursue administrative appeals or any other legal action. 888-REG-FAIR / Ombudsman@SBA.gov.