# EXHIBIT 9

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
ONE PENN CENTER, 1617 JOHN F. KENNEDY BLVD., SUITE 520
PHILADELPHIA, PA 19103-1844

PHILADELPHIA
REGIONAL OFFICE

July 21, 2026

**BY E-MAIL**

Institutional Shareholder Services Inc.
C/O Mari-Anne Pisarri, Esq.
Pickard Djinis and Pisarri LLP
1818 N Street, NW
Suite 515
Washington, DC 20036
mpisarri@pickdjin.com

**Re: In the Matter of Institutional Shareholder Services Inc. (P-02556)**

Ms. Pisarri:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission ("SEC" or "Commission"). Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, we have enclosed a subpoena for documents issued to your client, Institutional Shareholder Services Inc. ("ISS"), in connection with the above-referenced investigation.

The enclosed subpoena requires ISS to produce documents or information to the SEC by August 4, 2026. For smaller electronic productions, under 10 MB in size, the materials may be e-mailed to ENF-CPU@sec.gov. For larger electronic productions, please send the materials via FTP to ENF-CPU@sec.gov, or contact us to discuss alternative electronic delivery procedures. If you wish to send production media, please deliver the materials to:

ENF-CPU (U.S. Securities and Exchange Commission)
14420 Albemarle Point Pl.
Suite 102
Chantilly, VA 20151-1750

Please also provide a duplicate copy of any document production cover letters to levenbergk@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please produce the subpoenaed records electronically and in compliance with the SEC's Data Delivery Standards (see attached). These standards require the production of (1) electronic account transaction data in spreadsheet compatible form, and (2) electronic images for all requested documents. When producing the records, please consecutively

number and mark each document produced with a symbol that identifies it as being produced by ISS, and provide an index that briefly identifies the documents produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that ISS provides to the Commission and has other important information.

For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of ISS complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by ISS in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

This investigation is a non-public, fact-finding inquiry. The investigation does not mean that we have concluded that anyone has violated the law, and it does not mean that we have a negative opinion of any person, entity, or security. We are available to meet and confer regarding the production of responsive information.

If you have any questions, please contact me at (267) 602-2145 or levenbergk@sec.gov.

Sincerely,

Kevin Levenberg

Digitally signed by Kevin Levenberg
Date: 2026.07.21 12:52:28 -04'00'

Kevin E. Levenberg

Enclosures: Subpoena and Attachment
Business Records Certification
SEC Data Delivery Standards
SEC Form 1662

# SUBPOENA
# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Institutional Shareholder Services Inc. (P-02556)**

To: Institutional Shareholder Services Inc.
C/O Mari-Anne Pisarri, Esq.
Pickard Djinis and Pisarri LLP
1818 N Street, NW
Suite 515
Washington, DC 20036
mpisarri@pickdjin.com

---

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission no later than August 4, 2026.

---

☐ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date, and time specified below:

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: Kevin Levenberg Digitally signed by Kevin Levenberg Date: 2026.07.21 12:52:41 -04'00' Date: July 21, 2026

Kevin E. Levenberg
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 209(a) of the Investment Advisers Act of 1940.

---

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**In the Matter of Institutional Shareholder Services Inc. (P-02556)**
**July 21, 2026**

**Subpoena Attachment for Institutional Shareholder Services Inc.**

## A. DEFINITIONS

1. **"ISS"** means Institutional Shareholder Services Inc. and all its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships, aliases, code names, or trade or business names used by any of the foregoing.

2. "**Voting Services Clients**" refers to all ISS current and former clients to which ISS provided voting services, including but not limited to all current and former clients identified as receiving voting services on the client list produced by ISS bearing production number ISS26-001127.

3. **"Document"** includes any written, printed, or typed matter, including but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

4. The following rules of construction apply to this attachment:

   a. the functional words "any" and "all" shall be deemed to include the other functional word;
   b. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope;
   c. the use of the singular form of any word includes the plural and vice versa; and
   d. the term "including" means including but not limited to.

## B. INSTRUCTIONS

1. Please put an identifying notation on each page of each document to indicate that it was produced by you in connection with this matter, and the page number of all the documents submitted.

2. This subpoena requests documents and information for the period September 1, 2022 through the present ("Relevant Period").

3. This request covers all documents in or subject to your possession, custody, or control, including all documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason—including a claim of attorney-client privilege—you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

   a. its author(s);
   b. its date;
   c. its subject matter;
   d. the name of the person who has the item now, or the last person known to have it;
   e. the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f. the basis upon which you are not producing the responsive document;
   g. the specific request in the request to which the document relates;
   h. the attorney(s) and the client(s) involved; and
   i. in the case of the work product doctrine, the litigation for which the document was prepared in anticipation.

4. If documents or information responsive to this subpoena no longer exist because they have been lost, discarded, deleted, or otherwise destroyed, you should identify such documents or information and give the date on which they were lost, discarded, deleted, or destroyed.

## C. DOCUMENTS TO BE PRODUCED

Please produce all documents or information identified below electronically, pursuant to the Commission's Data Delivery Standards.

1. Documents or information sufficient to show all current and former ISS clients during the Relevant Period, preferably in Excel format (*see, e.g.,* the client list produced by ISS bearing production number ISS26-001127), including information sufficient to show:

   a. Client number;

   b. Client name;

   c. Services provided (*e.g.*, benchmark, specialty, customized, PX, special situations, climate solutions, indices, voting services, vote disclosure service, *etc.*);

   d. Client type (*e.g.*, individual, high net worth individual, institution, pension plan, private fund, other adviser, *etc.*);

   e. Whether the client is a government entity;

   f. Whether the client (or a client's parent or affiliated company) is a corporate issuer;

   g. Any other services provided to the client by ISS or any of ISS' affiliates outside of the advisory agreement(s) applicable to each client; and

   h. For relationships terminated during the Relevant Period, the termination date and reason for termination.

2. For all ISS Voting Services Clients during the Relevant Period, all vote authorization registration agreements and any modifications, renewals, or terminations of vote authorization registration agreements.

3. An electronic export or exports of ProxyExchange recommendation and voting data for all ISS Voting Services Clients during the Relevant Period, including all data fields referenced in the sample reports of ProxyExchange data produced by ISS on April 27, 2026 (bearing production numbers ISS26-001247 – ISS26-001260).

[FOR DOMESTIC U.S. RECORDS]

**DECLARATION OF [*Insert Name*] CERTIFYING RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by [*insert name of company*] as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

   (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

   (b) kept in the course of regularly conducted business activity; and

   (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].

______________________________

[*Name*]

**U.S. Securities and Exchange Commission**

# Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC). *****Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.*****

General Instructions ..... 1
Delivery Formats ..... 2
I. Imaged Productions ..... 3
1. Images ..... 3
2. Image Cross-Reference File ..... 3
3. Data File ..... 3
4. Text ..... 3
5. Linked Native Files ..... 3
II. Native File Productions without Load Files ..... 4
III. Adobe PDF File Productions ..... 4
IV. Audio Files ..... 4
V. Video Files ..... 4
VI. Electronic Phone Records ..... 4
VII. Electronic Trade and Bank Records ..... 4
VIII. Audit Workpapers ..... 5
IX. Mobile Device Data ..... 5

## General Instructions

The current mailing address for all physical productions sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. ***(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)***

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
    a. Case number, case name and requesting SEC staff member name
    b. A list of each piece of media included in the production with its unique production volume number
    c. A list of custodians, identifying the Bates range for each custodian
    d. A list of redacted documents and the redaction reason
    e. The time zone in which the emails were standardized during conversion
    f. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 30 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive or Microsoft Office 365.
14. Productions containing BSA or SAR material must be encrypted. Secure File Transfer applications may be used to produce BSA or SAR material. BSA or SAR material should be segregated and appropriately marked as BSA or SAR, or should be produced separately from other case related records.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

***Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.***

**Delivery Formats**

## I. Imaged Productions

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files. Bates numbers should not contain spaces. Hyphens ( - ) and underscores ( _ ) are acceptable.

### 1. Images

a. Black and white images must be 300 DPI Group IV single-page TIFF files
b. Color images must be produced in JPEG format
c. File names cannot contain embedded spaces or special characters (including the comma)
d. Folder names cannot contain embedded spaces or special characters (including the comma)
e. All image files must have a unique file name, i.e. Bates number
f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image
g. The number of image files per folder should not exceed 2,000 files
h. Excel spreadsheets should have a placeholder image named by the Bates number of the file
i. AUTOCAD/photograph files should be produced as a single page JPEG file

### 2. Image Cross-Reference File

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

### 3. Data File

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

a. The first line of the .DAT file must be a header row identifying the field names
b. The .DAT file must use the following *Concordance®* default delimiters:
   Comma ¶ ASCII character (020)
   Quote þ ASCII character (254)
c. If the .DAT file is produced in Unicode format it must contain the byte order marker
d. Date fields should be provided in the format: mm/dd/yyyy
e. Date and time fields must be two separate fields
f. The time zone must be included in all time fields
g. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
h. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
i. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
j. BEGATTACH and ENDATTACH fields must be two separate fields
k. A complete list of metadata fields is available in **Addendum A** to this document

### 4. Text

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

### 5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.

a. Native file documents must be named per the FIRSTBATES number
b. The full path of the native file must be provided in the .DAT file for the LINK field
c. The number of native files per folder should not exceed 2,000 files

## II. Native File Production without Load Files

With prior approval, native files may be produced without load files. Native file productions should not be Bates numbered. Native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. Native email files (.PST or .MBOX) must be separated by custodian.

## III. Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e. each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | |
|---|---|
| 1) Caller Name: | Caller's name or account/identification number |
| 2) Originating Number: | Caller's phone number |
| 3) Called Party Name: | Called party's name |
| 4) Terminating Number: | Called party's phone number |
| 5) Date: | Date of call |
| 6) Time: | Time of call |
| 7) Filename: | Filename of audio file |

## V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI. Electronic Phone Records

When producing an MS Excel spreadsheet for electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VII. Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. The fields and information that must be included are outlined in **Addendum C** of this document.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. The fields and information that must be included are outlined in **Addendum C** of this document.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format via laptop computer, web-based viewing platform, or otherwise, allowing for viewing in the same format and organization as the firm's audit team. Prior to production of workpapers via laptop computer or web-based viewing platform, audit firms should contact the requesting SEC staff member for additional information and written agreements addressing use of software, access, and viewing protocols.

**IX. Mobile Device Data**

Before producing any mobile device data (including but not limited to text messages and application data) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format. Productions containing chat data from applications must be identified at the time of production and the following information must be provided to the requesting SEC staff member and the SEC Centralized Production Unit: chat application, chat data format, and how the length of a chat is determined (i.e. set duration of time, number of minutes without messages, etc.)

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

| | | |
|---|---|---|
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

| | | |
|---|---|---|
| HEADER | Return-Path:<br><example_from@dc.edu><br>X-SpamCatcher-Score:1[X]<br>Received:from[136.167.40.119]<br>(HELO dc.edu)<br>by fe3.dc.edu (CommuniGate<br>Pro SMTP4.1.8)<br>with ESMTP-TLS id 61258719<br>for example_to@mail.dc.edu;<br>Mon, 23 Aug 2004 11:40:10 -<br>0400<br>Message-ID:<br><4129F3CA.2020509@dc.edu><br>Date: Mon, 23 Aug 2005<br>11:40:36 -400<br>From: Taylor Evans<br><example_from@dc.edu><br>User-Agent:Mozilla/5.0<br>(Windows;U; Windows NT 5.1;<br>en-US;rv:1.0.1)<br>Gecko/20020823 Netscape/7.0<br>X-Accept-Language:en-us,en<br>MIME-Version:1.0<br>To: Jon Smith<br><example_to@mail.dc.edu><br>Subject:Business Development<br>Meeting<br>Content-Type:<br>text/plain;charset=us-ascii;<br>format=flowed<br>Content-Transfer-Encoding:7bit | Email: The email header information<br>Native: (empty) |
| SHA256 | AD6128C5CA40164AF71A1E<br>FC800E12D2F195CE07BB5F8<br>C813B0888A2DDE6A06F | SHA-256 hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

**Sample Image Cross-Reference File:**

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

**For Calls:**

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

**For Text Messages:**

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

**For Mobile Data Usage:**

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# ADDENDUM C

For electronic account transaction data in MS Excel spreadsheet file format, or in a delimited text file format with a preferred vertical bar delimiter, include the following (or similar) fields of information in **columnar form** and in **separate tabs** of the spreadsheet/delimited text file:

**A. Account Information Tab**

Listing of accounts produced showing the following:

1. Account Title
2. Account Address
3. Account Number
4. Account Type
5. Taxpayer Identification #
6. Account Open Date
7. Account Closed Date
8. Account Owners/Signatories
9. Relationship (e.g., CEO, CFO, officer, treasurer, founding member, account owner, etc.)

**B. Account Transaction Information Tab**

Download of transaction data for all accounts produced showing the following:

1. Account Number
2. Transaction ID #
3. Transaction Type (e.g., deposit, withdrawal, check, incoming wire, outgoing wire, ACH transaction, account transfer, account fee, cashiers check, etc.)
4. Transaction Post Date
5. Transaction Date
6. Transaction Amount
7. Transaction Amount Code (e.g., debit or credit)
8. Check#
9. Transaction Description (e.g., payor/payee of transaction, name of merchant/business or individual receiving or depositing funds, etc.)
10. Account Balance

**C. Detail Information Tab for Wire Transfers, ACH Transactions, and Other Bank/Account Transfers**

Download of additional information concerning any of the transactions in Section B, related to any wire transfer, ACH transaction, and other bank/account transfer transaction information showing the following or similar information:

1. Account Number
2. Transaction Reference #
3. Transaction Date (date that transaction posts to an account)
4. Transaction Type (e.g., incoming/outgoing wire, incoming/outgoing ACH transaction, incoming/outgoing other bank/account transfer, etc.)
5. Transaction Amount
6. Transaction Amount Code (e.g., debit or credit)
7. Originator Name
8. Originator Address
9. Originator ID / Bank Acct# (bank account# of the debit/payor side of the wire)
10. Beneficiary Name
11. Beneficiary Address
12. Beneficiary ID / Bank Acct# (bank account# of the credit/payee side of the wire)
13. Debit ID (bank name and address for debit/payor side of transaction)
14. Credit ID (bank name and address for credit/payee side of transaction)

15. Originator to Beneficiary Information
16. Bank to Bank Instruction
17. Other available wire transaction information captured by bank that is not referenced above

**D. Legend Tab**

Listing of any codes used or contained in the information provided above.

**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record*. Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*. You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*. Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary

> evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*. Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever—
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
>
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

**C. Submissions and Settlements**

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

**D. Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E. Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F. Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G. Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H. Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it

performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

* * * * *

*Small Business Owners*:

The National Ombudsman resolves concerns of uneven or excessive federal regulatory enforcement. Reviews are confidential and do not waive the right to pursue administrative appeals or any other legal action. 888-REG-FAIR / Ombudsman@SBA.gov.

The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities laws and regulations as they affect small businesses, you can contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460.